UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at PIKEVILLE**

RICHARD G. BROWN,                    )
                                     )
    Plaintiff,               )
                                     ) Civil Action No. 7:11-CV-27-JMH
v.                                   )
                                     )
MICHAEL J. ASTRUE,                   )
COMMISSIONER OF SOCIAL               ) **MEMORANDUM OPINION AND ORDER**
SECURITY,                            )
                                     )
    Defendant.               )
                                     )

**         **      **     **     ***

This matter is before the Court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). [DE 8, 9].[1] Plaintiff Brown has also filed a response in opposition to the Commissioner's Motion for Summary Judgment. [DE 12]. The Court, having reviewed the record and being otherwise sufficiently advised, will grant the plaintiff's motion and deny the defendant's motion.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed for disability benefits on May 3, 2007, alleging an onset of disability of June 16, 2005, due to: post-burn upper extremity impairments; cervical and lumbar pain and stiffness; knee pain; a right thigh injury; chronic obstructive

---

[1]    These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

pulmonary disease ("COPD"); anxiety; and depression. [*See* Administrative Record (hereinafter "AR") 18-21]. A hearing on his application was conducted on June 24, 2009, [AR 27], and his application was denied by Administrative Law Judge ("ALJ") Roger L. Reynolds on October 1, 2009. [AR 26]. Plaintiff timely pursued and exhausted his administrative remedies, and this matter is ripe for review and properly before this Court under the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff was forty-two-years-old at the time of the ALJ's final decision. [*See* AR 31]. He is a high school graduate and took a vocational course in diesel mechanics. [AR 31-32]. Plaintiff engaged in past work as a pumper/hauler for oil wells. [AR 31]. As the result of an accident at work in June 2005, Plaintiff sustained extensive burns to his face and upper extremities, which required skin grafts. [AR 186]. During his hearing, he reported continued difficulty extending his arms due to the residual effects of the burns. *Id.* Plaintiff's maladies were compounded in July of 2007, when he was involved in a motor vehicle accident. *Id.* As a result of the wreck, Plaintiff sustained a cervical fracture and puncture wound to his right thigh.

In January of 2006, Dr. James Owen examined Plaintiff for the purpose of determining Worker's Compensation eligibility. [AR 194]. Dr. Owen opined that, due to Plaintiff's neck, arm and knee problems, he would not be able to engage in activity that required

recurrent bending, squatting or stooping. [AR 198]. Dr. Owen also found that Plaintiff would not be able to engage in activity that would expose his arms to hot and cold, nor would he be able to "drive effectively" due to persistent neck pain. *Id.* Dr. Owen further opined that Plaintiff would have moderate to severe difficulty lifting, handling, or carrying objects and that "traveling, speaking, etc. would be affected." *Id.*

In May of 2006, Plaintiff began treatment for neck and back pain with Dr. John Gilbert. [AR 204]. An MRI revealed "mild arthritic changes," which included degeneration at C5-C6 and C6-C7 and mild neuroforaminal narrowing, although no herniation was seen. [AR 205]. As for his low back, Plaintiff was diagnosed with degenerative disc disease, with an annular tear at L2-L3, mild scoliosis, and facet arthropathy at L2-S1. A nerve conduction study revealed moderate right ulnar neuropathy at the elbow and right L5 radiculopathy. Although he subsequently denied having used marijuana since his early twenties, Plaintiff tested positive for marijuana use during a drug screen ordered by Dr. Gilbert. [AR 213, 269-70]. By November 15, 2006, Dr. Gilbert reported that Plaintiff's function and activities of daily living were "stable and being improved." [AR 216]. On April 17, 2007, Plaintiff was released from Dr. Gilbert's care. [AR 225].

Agency consultant Dr. David Jansen rendered a physical Residual functional capacity ("RFC") assessment on June 19, 2007.

3

[AR 275].  Dr. Jansen opined that Plaintiff could occasionally lift, carry, or pull up to fifty pounds; frequently lift, carry or pull twenty-five pounds; stand and/or walk for about six hours in an eight-hour workday; and sit for about six hours in an eight-hour workday.  [AR 276].  He added that Plaintiff has diminished range of motion, which would preclude heavy lifting and carrying, and stooping on any more than a frequent basis.  *Id.*  He also opined that Plaintiff would be able to kneel only frequently.  *Id.*

In July of 2007, Plaintiff was examined for his knee problems by Dr. Darren Johnson.  [AR 301].  Dr. Johnson diagnosed him with a questionable tear of the anterior cruciate ligament ("ACL"), as well as a questionable tear of the posterolateral corner.  Dr. Johnson proposed reconstructive surgery, pending the results of an MRI.  *Id.*  A radiology report dated April 20, 2007 indicates that no ligamentous tear was present, however.  The reading radiologist diagnosed Plaintiff with degeneration of the knee, as well as a small meniscus tear and mild osteoarthritis.  [AR 357].  There is no evidence in the record to suggest that Plaintiff underwent the surgery that Dr. Johnson recommended.

Also in July of 2007, Plaintiff was involved in the aforementioned motor vehicle accident.  As a result of the accident, he sustained penetrating trauma to his right thigh and developed compartment syndrome, which required surgical intervention.  [AR 303].  He was also diagnosed with a cervical

4

odontoid fracture and was instructed to wear a cervical collar. [AR 314, 307]. On August 28, 2007, Dr. Phillip Tibbs provided a neurological consultation for Plaintiff's neck problems. [AR 455]. Dr. Tibbs reported that Plaintiff had five out of five strength and continued to treat him with a cervical collar. *Id.* At an October 2007 follow-up, Dr. Tibbs noted that, "overall," Plaintiff was "better" and reported that Plaintiff's x-rays revealed healing and, thus, Plaintiff could wean out of his cervical collar [AR 454]. Dr. Tibbs anticipated a good outcome and felt that Plaintiff only needed to be seen on an as-needed basis. *Id.*

Agency medical consultant Carlos Hernandez, M.D. performed a second physical residual functional capacity assessment on November 11, 2007, in which he affirmed the initial RFC assessment of June 21, 2007. [AR 481, 488]. He concluded that the medical evidence of record showed that any injuries Plaintiff sustained in the motor vehicle accident would not significantly affect the initial RFC assessment. In support of this conclusion, Dr. Hernandez cited the opinion of Dr. Tibbs, who expected Plaintiff to fully recover from his cervical fracture. He also cited the report of treating physician Dr. Alam, who reported that Plaintiff's right thigh was healing satisfactorily. [AR 483].

Plaintiff was consultatively examined on August 8, 2009 by Dr. Brian Harshman. [AR 489]. Dr. Harshman reported that Plaintiff was able to perform gait, station, heel, toe, tandem walking, and

squatting without difficulty.   [AR 490].   He also noted normal strength and sensation throughout all extremities.   *Id.*   Dr. Harshman found that Plaintiff would have limited tolerance for activities involving longer periods of standing or walking, bending over, heavy lifting and stooping.   [AR 491].

As reflected in the administrative record, Plaintiff received treatment for mental health issues, as well.   Plaintiff received treatment, for medication only, from Dr. Granacher in early 2007. [AR 200-203].   During that course of treatment, Plaintiff was diagnosed with PTSD and depression, and was assigned global assessment of functioning ("GAF") scores of fifty to fifty-five.[2] He was treated with medications including Cymbalta, Celexa, trazadone, and clonazepam.   During his administrative hearing, Plaintiff testified that he was receiving monthly counseling for his mental health issues.   [AR 45-46].

At the Social Security Administration's request, Robert Fitz, Ph.D. performed a psychiatric examination of Plaintiff on June 11, 2007.   [AR 265].   Dr. Fitz diagnosed PTSD, generalized anxiety disorder, adjustment disorder with depressed mood, and bereavement, due to the then-recent death of Plaintiff's wife.   [AR 272].   Dr.

---

[2]   "GAF is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning. . . . A GAF score may help an ALJ assess mental RFC, but is not raw medical data." *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 503 (6th Cir. 2006).   A GAF score of fifty-one to sixty suggests moderate symptoms, while a score of forty-one to fifty indicates symptoms that are serious. *Id.*

Fitz assigned a GAF of fifty and opined that Plaintiff's ability to understand, retain, and follow directions was fair. Further, he found, Plaintiff's ability to sustain attention to perform simple repetitive tasks was fair, but poor at times. Dr. Fitz found that Plaintiff's ability to relate to others was fair and that his ability to tolerate stress and work pressures was poor. *Id.*

H. Thompson Prout, Ph.D. rendered a mental RFC assessment on June 21, 2007. Dr. Prout found that, although Plaintiff's allegations of mental impairment were not "clearly delineated," credible impairments were clear. [AR 285]. Based on the evidence, however, Dr. Prout opined that Plaintiff's mental limitations would not create marked restrictions in function. *Id.* Dr. Prout gave "great weight" to Dr. Fitz's opinion, except for the portion dealing with stress tolerance. Dr. Prout concluded that Plaintiff appeared to be able to "[u]nderstand, remember, and sustain attention with simple, even-paced tasks for extended periods of two hour segments" and to "[r]elate adequately in object-focused settings" and "[a]dapt to expected, routine task demands."

Agency consultant Jan Jacobson, Ph.D. rendered another mental RFC assessment on October 15, 2007. [AR 450]. Dr. Jacobson found that Plaintiff's ability to carry out detailed instructions and his ability to maintain attention and concentration for extended periods were moderately limited. *Id.* Further, Dr. Jacobson found that Plaintiff's ability to interact with the public and his

7

ability to respond appropriately to changes in the workplace were moderately limited. [AR 451]. Ultimately, Dr. Jacobson affirmed the mental RFC assessment of June 21, 2007. [AR 452].

Plaintiff's regular treating physician during the relevant time period was Van Breeding, MD. [*See* AR 376]. Dr. Breeding treated Plaintiff for a variety of conditions, including complications following the explosion at work; insomnia; hypertension; and high cholesterol. [*See e.g.,* AR 376-479]. Plaintiff was also diagnosed with emphysema and COPD, involving heavy tobacco use. [AR 423]. Based on the administrative record, and Plaintiff's arguments upon this appeal, it is apparent that Dr. Breeding did not render a functional assessment of Plaintiff that was before the ALJ at the time of his decision.

ALJ Reynolds issued his decision on October 1, 2009. He found that the medical evidence established the following combination of severe impairments: "status post second and third degree burns to arms with skin grafting; status post motor vehicle accident with cervical odontoid fracture and right thigh wound; bilateral knee pain secondary to meniscus tears; chronic obstructive pulmonary disease (COPD) with continued nicotine abuse; a history of marijuana abuse; post traumatic stress disorder (PTSD); an adjustment disorder; bereavement issues and a generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c))." [AR 18]. The ALJ found these impairments to be severe in combination within the

8

meaning of the regulations, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1. [AR 19]. The ALJ found that the Plaintiff was not disabled and that, while he was unable to perform his past work, he retained the residual functional capacity to perform a limited range of sedentary work. [AR 24].

## II. OVERVIEW OF THE PROCESS

The ALJ, in determining disability, conducts a five-step analysis:

1.   An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.
2.   An individual who is not working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.
3.   If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)," then he is disabled regardless of other factors.
4.   If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.
5.   If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994)(citing 20 C.F.R. § 404.1520 (1982)). "The burden of

proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

## III. STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g), *Foster v. Halter,* 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching her conclusion. *See Landshaw v. Sec'y of Health & Human Servs.,* 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip,* 25 F.3d at 286.

## IV. ANALYSIS

### A. THE ALJ'S RELIANCE ON EARLIER REPORTS DOES NOT RENDER HIS DECISION UNSUPPORTED BY SUBSTANTIAL EVIDENCE.

Plaintiff contends that the ALJ relied on medical reports generated prior to his motor vehicle accident to disprove subsequent medical reports, and that he erred in doing so.

10

Plaintiff goes on to state, without citing any specific examples from the record, that the ALJ unfairly demeaned the Plaintiff and inaccurately depicted the evidence.  Plaintiff has cited no portion of the record in support of this position and, as this Court has stated, "[t]he parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments." Gen. Order 09-13 (E.D. Ky. Nov. 6, 2009)(citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 491 (6th Cir. 2006)).  Nevertheless, the Court is not persuaded by Plaintiff's argument.  The record provides substantial evidence that Plaintiff recovered satisfactorily from the injuries he sustained in the car accident.  A second physical RFC, rendered after the accident, affirmed the initial RFC, finding that Plaintiff's subsequent injuries did not significantly affect his ability to function. [AR 481].  In support of its conclusion, the second RFC cited the opinions of physicians that were treating the Plaintiff for the injuries he sustained in the car accident.  *Id.*  Plaintiff has provided no medical evidence in the record to suggest that he had residual impairments from the car accident that were not taken into account by the ALJ.  Accordingly, Plaintiff's argument on this front fails.

**B.  THE VOCATIONAL EXPERT'S TESTIMONY DID NOT CONSTITUTE SUBSTANTIAL EVIDENCE BECAUSE IT IS UNCLEAR, BASED ON THE**

**ALJ'S OPINION, WHETHER THE HYPOTHETICAL PRESENTED AN ACCURATE DESCRIPTION OF PLAINTIFF.**

In his opinion, the ALJ made clear that he intended to rely upon the opinions of Drs. Owen, Harshman, and Fitz, as well as the state agency psychological consultants. [AR 23-24]. The following hypothetical was posed to the vocational expert ("VE") at the administrative hearing:

> Assume, first of all, a person of Mr. Brown's age, education, and experience, and the capacity to lift, carry, push, or pull up to 20 pounds occasionally, ten pounds frequently; sitting, standing, or walking six hours each in an eight hour day; no climbing of ropes, ladders, or scaffolds; no exposure to direct sunlight, chemicals, temperature extremes, concentrated dust, gases, smoke, poor ventilation, excess humidity; no work with hands over the head, occasional stooping, crouching; no kneeling, crawling or operation of foot pedal controls; no commercial driving; requires entry level work with simple, repetitive procedures, no frequent changes in work routines, independent planning or setting of goals; should work preferably in an object-oriented environment with only interaction with the general public, not requiring extended conversation and coordinated activities, dispute resolution, and so forth.

[AR 65]. Based upon this hypothetical, the VE testified that Plaintiff would be unable to perform his any of his past work. [AR 65-66]. She found that he would, however, be able to perform light duty and sedentary jobs existing in significant numbers in the national economy. [AR 65]. The ALJ ultimately concluded that Plaintiff could perform sedentary work with numerous restrictions. [AR 25].

Plaintiff contends that the hypothetical posed to the VE did not reflect accurately the restrictions assessed by the sources

12

whose opinions the ALJ intended to adopt.  First, Plaintiff points out that the hypothetical did not include the restrictions regarding stress tolerance, attention, and concentration, as assessed by Dr. Fitz.  After examining Plaintiff, Dr. Fitz concluded, in part, that Plaintiff's "ability to sustain attention to perform simple repetitive tasks is fair, but poor at times," and that "[h]is ability to tolerate stress and work pressures of day-to-day work activities is poor."  [AR 272].  In addition, Plaintiff argues that the hypothetical did not include the extent of restriction in driving, standing, stooping and bending assessed by Drs. Owen and Harshman.  [*See* AR 194, 489].  Specifically, Dr. Owen opined that Plaintiff would not be able to engage in any activity that required recurrent bending, squatting, stooping, and that he would not be able to "drive effectively" due to neck pain.  [AR 198].  Further, Dr. Harshman determined that had the ability to sit, stand or walk for "short periods of time," and that he would have "limited tolerance" to activities involving "longer periods of standing or walking, bending over, heavy lifting, and stooping." [AR 491].

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 516 (6th

Cir. 2010)(citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239-42 (6th Cir. 2002)). The Commissioner contends that the ALJ gave probative weight to the portions of the opinions "that were supported by the objective medical evidence" in accordance with 20 C.F.R. §§ 404.1527(d), 416.927(d) (2011). While the ALJ was required to incorporate into the hypothetical only those limitations that he found to be credible, *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993), he was not free to disregard claim-supportive portions of otherwise controlling opinions, with no explanation for doing so. *See Walton v. Comm'r of Soc. Sec.*, 187 F.3d 639, *2 (6th Cir. 1999)(table)(ALJ "carefully explained" reasons for rejecting a particular portion of the otherwise controlling opinion of a non-treating source).

Because the ALJ did not address the limitations at issue, it is unclear whether he found them not credible or whether he simply failed to consider them entirely. "While a 'deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case,' inaccuracies, incomplete analysis and unresolved conflicts of evidence can serve as a basis for remand." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 749 (6th Cir. 2011)(citing *Loral Def. Sys.-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999)). Had the omitted restrictions been included in the hypothetical posed to the VE, there is a reasonable possibility that the VE's

14

opinion regarding Plaintiff's ability to work would have been different.  Because the ALJ did not carry his burden of proof at the final stage of analysis, this matter must be remanded.  At the very least, the ALJ should articulate his reasons for rejecting portions of the opinions to which he afforded controlling weight.

**IV.   CONCLUSION**

For the foregoing reasons, we **DENY** the defendant's Motion for Summary Judgment and **GRANT** the plaintiff's motions for summary judgment.  This matter is hereby **REMANDED** to the Social Security Administration for further consideration not inconsistent with this opinion.

**IT IS SO ORDERED** this the 2nd day of December, 2011.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge

15

16